UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-185-GWU

JESSICA JONES, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

06-185 Jessica Jones

> impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

06-185  Jessica Jones

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

06-185  Jessica Jones

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

06-185  Jessica Jones

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

06-185  Jessica Jones

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jessica Jones, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of lumbar spine degenerative disc disease status post fusion at L3-4 and L4-5, obesity, cervical spine degenerative disc disease, migraine headaches, a mood disorder and an anxiety disorder.  (Tr. 571).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore would not be entitled to benefits.  (Tr. 575-80).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 29-year-old individual with a high school equivalency education and a work history as a certified nursing assistant, order clerk, data entry clerk, food server, and cashier, could perform any jobs if she were limited to "light" level exertion with the ability to stand and walk four hours and to sit four hours in an eight-hour day, and also had the following non-exertional restrictions.  (Tr. 847).  She: (1) could not crawl or climb ladders, ropes, or scaffolds; (2) could occasionally stoop, bend,

squat, kneel, crouch, and climb ramps and stairs; (3) could only occasionally reach with her left arm and could not engage in "repetitive continuous" flexion or extension of her head from side to side; (4) was limited to occasional pushing and pulling or operation of foot controls with her legs; (5) had to avoid concentrated exposure to extreme heat or humidity, full body vibration, fumes, odors, dust, gases, unprotected heights, or dangerous machinery; (6) had a moderately limited ability to understand, remember, and carry out complex work instructions, make judgments on complex, work-related decisions, interact with the public, respond appropriately to usual work situations and to changes in a routine work setting; and (7) was mildly to moderately limited in her ability to interact appropriately with coworkers and supervisors. (Tr. 848-9). The VE responded that such a person could perform the plaintiff's past work as a warehouse order clerk as well as her data entry job. (Tr. 849). In the alternative, he identified other jobs that the individual could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 849-50).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability in her most recent application due to migraines and "crippling arthritis" in her back, which limited her ability to bend, lift, and sit and

stand for long periods of time. (Tr. 605-6). Significantly, she also alleged that her medication, which included a narcotic pain reliever and a muscle relaxer, kept her from doing household chores. (Tr. 606, 611). She testified at her most recent administrative hearing in October, 2008 that her medications made her drowsy. (Tr. 827).

Medical records show that the plaintiff underwent extensive treatment for complaints of lower back pain and eventually underwent a discectomy and fusion at the L3-4 and L4-5 levels of her lumbar spine in or on May 29, 2007. (Tr. 731-4). Her treating surgeon, Dr. Michael Moran, indicated that she was doing well in follow-up and by September, she denied leg pain or numbness, had a normal gait, no point tenderness, no straight leg raising pain, full muscle strength, and equal reflexes. (Tr. 719). He advised the plaintiff to continue increasing her activities as tolerated, and planned to start weaning her off pain medication. In February, 2008, Dr. Moran completed a functional capacity assessment indicating that the plaintiff could lift less than 10 pounds, stand or walk less than two hours and sit two hours in an eight-hour day, with a need for alternating sitting and standing at will. He opined that she could never perform any postural activities, would have limitations on reaching, pushing, pulling, and handling, and would have to lie down at unpredictable intervals. (Tr. 743-4). He added that "if she is still taking pain medication she may have trouble working." (Tr. 744).

06-185  Jessica Jones

Subsequent office notes from Dr. Moran or a physician's assistant in his office indicate that the plaintiff fell in March, 2008, although no abnormalities were identified upon examination or x-rays and she continued to complain of increasing pain in an August, 2008 follow-up visit. (Tr. 789, 793). Although an examination showed that there were no neurological abnormalities and an MRI showed no problems with the fusion site, there was a possible osteophyte formation or extruded interbody grafting material which might affect the L-5 nerve root. (Tr. 791-3). The plaintiff requested pain medication and was prescribed Percocet and Zanaflex. (Tr. 787). Subsequently, she was evaluated for neck and shoulder pain and after an MRI of the cervical spine showed degenerative disc disease without cord compression, disc herniations, or neural foraminal stenosis, Dr. Moran recommended physical therapy and a consultation with a pain clinic. (Tr. 804).

Besides Dr. Moran, another treating physician, Dr. Roy Varghese, had opined in December, 2003 that the plaintiff could perform light level exertion with standing or walking four hours per day and sitting about four hours, with frequent changes of position; she could never climb ladders, could occasionally twist, stoop, crouch, and climb stairs, and needed to avoid concentrated exposure to hazards. He opined that the plaintiff would be absent from work more than three times a month. The reasons given for these restrictions were migraine headaches and back and hip pain. (Tr. 397-8).

State agency physicians in 2003 also restricted the plaintiff to light level exertion, with slightly different non-exertional restrictions.  Both of these non-examining sources agreed that the plaintiff should never climb ladders, ropes, and scaffolds, should occasionally stoop and crawl, and needed to avoid concentrated exposure to vibration, but the more recent reviewer also added restrictions on concentrated exposure to extreme cold, heat, humidity, pulmonary irritants, and opined that the plaintiff should not have even moderate exposure to hazards.  (Tr. 222-30, 303-11).

More recently, Dr. Mark Burns conducted a consultative examination on July 20, 2008 which showed almost no abnormalities other than obesity, and concluded that the plaintiff would have no restrictions on her ability to perform physical work activity.  (Tr. 772-80).

The ALJ stated in his decision that he granted most probative weight to the restrictions given by Dr. Varghese.  (Tr. 577).  He found that Dr. Varghese's exertional limitations were well reasoned, well supported by his treatment notes, and were generally consistent with the medical evidence of record before and after the date of the medical source statement.  They were also generally consistent with the state agency reviewers.  (Id.).  He declined to accept Dr. Varghese's conclusions regarding a very low tolerance for continuous sitting or standing or a need to be absent from work more than three times a month, due to the lack of supporting

06-185  Jessica Jones

physical findings. (Id.). The ALJ stated that he gave very little probative weight to Dr. Moran's restrictions, because they were inconsistent with the physician's own treatment notes, which indicated that the plaintiff was doing well following her surgery, and inconsistent with the examination by Dr. Burns. (Id.).

The plaintiff challenges the rejection of Dr. Moran's opinion, and of the sitting and standing restrictions and likely absences from work described by Dr. Varghese.

The Commissioner's regulations require that the opinion of a treating physician be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. Hensley v. Astrue, 573 F.3d 263, 266 (6th Cir. 2009), citing 20 C.F.R. § 404.1527(d)(2). The Sixth Circuit has emphasized that if the opinion of a treating physician is not accepted the Commissioner must follow his regulations in giving "good reasons" for rejecting it. Id. at 266-7. In the present case, the ALJ gave good reasons for declining to accept the more extreme restrictions of Dr. Moran as far as the plaintiff's lack of physical examination findings was concerned, but he did not address the physician's opinion that pain medication would interfere with her ability to work. As noted, the plaintiff testified that she was taking Percocet, a narcotic pain reliever whose side effects are said to include lightheadedness, dizziness, drowsiness, and sedation. Physicians' Desk Reference, (Bette Kennedy, ed., 2010), p. 1123. She had recently been prescribed a certain amount of

06-185  Jessica Jones

Percocet at Dr. Moran's office and had been referred to a pain clinic. In other words, this evidence does support the plaintiff's claim that she was taking a prescription medication which could reasonably be expected to interfere with her ability to perform daily activities, and that would tend to support the treating physician's opinion that it would interfere with her ability to work. Although the court finds the ALJ's determination well supported by substantial evidence in all other respects, a remand will be required on this issue.

    The decision will be remanded for further consideration.

    This the 14th day of January, 2010.

Signed By:

G. Wix Unthank

United States Senior Judge